UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Z.A.H., by and through his guardian ad litem, MARJORIE CAMPIOTTI,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 1:16-cv-00256-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

## **INTRODUCTION**

Plaintiff Z.A.H. (a minor) ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2] Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 10). For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C. 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

1

substantial evidence in the record and is not based upon proper legal standards. Accordingly, the Court finds the ALJ's decision shall be **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

## FACTS AND PRIOR PROCEEDINGS

On January 26, 2012, an application on behalf of Plaintiff, a child under age 18, was filed for SSI benefits alleging disability beginning August 20, 2010. AR 260. Plaintiff's claim was denied initially on July 20, 2012, and upon reconsideration on February 28, 2013. AR 71. Plaintiff requested and received a hearing before Administrative Law Judge ("ALJ") Vincent Misenti. AR 120. On May 29, 2014, the ALJ issued an order denying benefits. AR 10-26. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 4, 2014. AR 1-4. This appeal followed.

### Hearing Testimony

On June 12, 2014, the ALJ presided over a hearing in Fresno, California. AR 30. Plaintiff and Plaintiff's step-father appeared and testified. AR 32. Plaintiff was represented by attorney Lars Christenson. AR 32.

Plaintiff was born on December 18, 2002 and was 11 years old at the time of the hearing. AR 51. He lives in a house in Porterville, California with his mother, step-father, and sister. AR 35, 40, 51. Plaintiff's step-father testified that Plaintiff has a learning disability. AR 37. Plaintiff attends special education classes for Math and English through a special education school. AR 43. Plaintiff attended this school in fifth and sixth grades. AR 43. Plaintiff, at the time of hearing, was in sixth grade. Plaintiff's teacher drives to his house for forty-five minute daily sessions to teach him Math and English classes due to Plaintiff's physical inability to attend school. AR 43. Plaintiff participates in five to six hours of schooling per week with homework assignments that follow. AR 40. Plaintiff's step-father testified that Plaintiff works on his homework for two to three hours before taking a forty-five minute break. AR 41, 42. After his break, Plaintiff continues working for approximately thirty minutes. AR 42. Plaintiff's mother, step-father, and sister are available to help him with his homework. AR 42. He is easily distracted at home while doing his homework if a guest enters the house. AR 46.

When asked about Plaintiff's physical impairments, Plaintiff's step-father testified that he has arthritis. AR 37. During school, Plaintiff must stand and walk around to prevent his joints from stiffening. AR 37. His joints in his knees, ankles, back, and neck swell every morning and every night. AR 38, 49. He has headaches once or twice daily which last "a couple hours." AR 48. Plaintiff also has neck problems and neck pain, stemming from his arthritis. AR 47. Plaintiff's step-father testified that his pain does not interfere with his ability to learn. AR 45. Plaintiff cannot run, jump, dismount from a swing, or perform similar "high impact moves." AR 39, 40. If Plaintiff does do any "high impact moves," his step-father testified that he will have pain throughout the day. AR 45. Plaintiff's step-father testified that Plaintiff can use a computer, use some utensils (a fork and spoon) but not others (a knife), he can dress himself but he cannot use a toothbrush or hairbrush and he struggles when writing with a pencil. AR 49, 50.

Plaintiff then testified that he is capable of camping and fishing with his family. AR 52. He helps care for the family dog, take him on walks, and feed him. AR 52. Plaintiff can skateboard and ride a bicycle. AR 54. Plaintiff enjoys playing cards. AR 53. He walks outside and collects bottles and cans for recycling. AR 54. Plaintiff does not have any friends outside his family. AR 54. He cleans his room at home. AR 56. Plaintiff testified that he ties his shoes, brushes his teeth, combs his hair, and showers without assistance. AR 57. He testified that his hands and feet swell every morning. AR 58. He testified that his hands hurt when he writes. AR 58.

When asked about Plaintiff's current treatment, Plaintiff's step-father testified that he sees a treating doctor every three months who prescribes pills and an injection that Plaintiff gets once per week to ease his pain. AR 38. Plaintiff's step-father alleged that the medication has an effect on Plaintiff's learning disability but provided no details. AR 39. Plaintiff has never been hospitalized for his arthritis. AR 38. Plaintiff takes Children's Tylenol for his headache pain. AR 49. He also takes daily medicine for his joint pain and swelling which reduces the symptoms. AR 53. When Plaintiff was asked, he described his pain level as a "2" out of 10 after he takes medicine for his joint pain and swelling. AR 53. Plaintiff also testified that his recent injections for his joints helped reduce the pain and swelling. AR 59.

///

**Medical Record**

A summary of Plaintiff's medical records shows a history of polyarticular arthritis and a learning disability. AR 334, 372, 422-423, 501. Plaintiff also complains of asthma, finger pain and stiffness, pain in hands, leg pain, mild thickening of the synovial fluid of the knees, fatigue, turning in his foot when he walks, ankle swelling, stiffness in the morning, clubbing of his fingers, decreased hand grip, headaches, upper respiratory issues, gastroenteritis, recurring ulcers, ringing in his ears, easy bruising, inability to participate in high impact activities, inability to sit for prolonged periods of time, 25% loss of motion in right knee, right ankle, left knee, and left ankle. AR 372, 384-388, 389-394, 395-403, 456, 461, 495, 499, 501, 539, 546.

The physicians' opinion evidence consists of consultative examining opinions from child psychologist Dr. Izzi; psychiatrist Dr. Portnoff; treating pediatric rheumatologist Edsel Arce-Hernandez, M.D.; and a state agency reviewing opinion from C. Bullard, M.D.

In September 2010, Plaintiff underwent a psychological examination by Roger A. Izzi, Psy.D. During the examination, Dr. Izzi administered a Wechsler Intelligence test for children ("WISC-IV") which resulted in a verbal IQ score of 77 and a full scale IQ score of 73. AR 334. Dr. Izzi diagnosed Plaintiff with Attention Deficit Hyperactivity Disorder and opined that Plaintiff's cognitive development did not appear to be limited. AR 337.

In June 2012, Lance Portnoff, Ph.D. examined Plaintiff and diagnosed (1) Attention Deficit-Hyperactivity Disorder; (2) borderline intellectual functioning; (3) juvenile rheumatoid arthritis (by history); and (4) asthma (by history). AR 374. Dr. Portnoff also administered a WISC-IV test which resulted in a verbal IQ score of 55 and a full scale IQ of 64. AR 373. Dr. Portnoff gave Plaintiff a Global Assessment of Functioning ("GAF") score of 58, indicating moderate symptoms or impairment.[3] AR 374.

In September 2011, Esdel Arce-Hernandez, M.D. examined Plaintiff and diagnosed him with polyarticular arthritis, though he noted the arthritis was "approaching complete remission." AR 487

---

[3] GAF scores range from 1 to 100, with 100 being the highest level of function.

Dr. Arce-Hernandez did not know if Plaintiff had any problems with attention, yet he opined that Plaintiff was "probably trying to get out of school work." AR 487.

On February 28, 2013, state agency physician C. Bullard, M.D. reviewed Plaintiff's medical records and diagnosed severe levels of (1) inflammatory arthritis; (2) ADD/ADHD; and (3) a learning disorder. AR 89. Dr. Bullard considered the 12.05 "MR[4]" listing, but did not diagnose Plaintiff with such a listing. AR 90.

## **CHILD DISABILITY SEQUENTIAL EVALUATION PROCESS**

Under the provisions of the Social Security Act, a child under the age of eighteen is "disabled" if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An impairment causes marked and severe functional limitations if it meets, medically equals, or functionally equals an impairment in the listings. 20 C.F.R. § 416.924(d).

In determining whether a child is eligible for SSI benefits on the basis of disability, the ALJ conducts a three-step inquiry. 20 C.F.R. § 416.924. The steps are:

(1) Is the child engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the child's impairment or combination of impairments severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the child's impairment(s) meet, medically equal, or functionally equal an impairment in the Listing of Impairments ("Listing") described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled.

A claimant meets a listed impairment if his own impairments match those described in a listing. 20 C.F.R. § 416.925. A claimant "medically equals" a listed impairment if he demonstrates medical findings related to his own impairment that are of equal medical significance to the listed one, even if his showing is deficient in other ways. 20 C.F.R. § 416.926(a). A claimant "functionally

---
[4] Prior to 2010, the term "mental retardation (MR)" was used in place of "intellectual disability." *See* Rosa's Law, Pub. L. 111-256 (formally changing terminology).

equals" a listing if his impairments result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). There are six domains of functioning the ALJ considers in determining functional equivalence: (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

## **THE ALJ'S DECISION**

In his decision, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. AR 10, 22. At the first step of the three-step child disability sequential evaluation process, the ALJ determined that Plaintiff was not engaged in substantial gainful activity at any time during the period of adjudication. AR 13. At the second step, he found that Plaintiff has the following medically determinable impairments which are severe: juvenile rheumatoid arthritis and a learning disability. AR 13.

Next, at the third step, the ALJ found that Plaintiff did not have an impairment that meets or medically equals a listing, specifically the "criteria of listings 114.09 for inflammatory arthritis and 12.05[5] for intellectual disability." AR 13. The ALJ then evaluated Plaintiff's functional equivalence in the six domains, and determined that Plaintiff suffered "less than marked" limitations in Acquiring and Using Information, Attending and Completing Tasks, Caring for Yourself, Health and Physical Well-Being, Interacting and Relating with Others; and a marked limitation in Moving About and Manipulating Objects. AR 17-22. Because he concluded that Plaintiff did not suffer from an "extreme" limitation in one area of functioning or a "marked" limitation in two areas, he determined that Plaintiff's impairments, alone or in combination, do not functionally equal any listed impairment. AR 22. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 22.

///

///

---

[5] Listing 112.05 is the "intellectual disability" prong for children under the age of 18. It parallels Listing 12.05 which is for adults but is modified to reflect the presentation of mental disorders in children. Because Listing 112.05 is the analogous and correct listing, the Court will interpret the ALJ's decision under that basis.

6

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## DISCUSSION

Plaintiff submits three arguments supporting his contention that this case warrants either remand or an award of benefits. He first asserts that the ALJ committed legal error by failing to properly assess his functional equivalence. (Doc. 14 at 15-19). Second, he asserts that the ALJ erred in finding that his impairment failed to meet or medically equal listed impairment 112.05D.[6] (Doc. 14 at 19-21). Plaintiff also contends the ALJ committed legal error by not having a pediatrician or other appropriate specialist evaluate the entire record as required under 42 U.S.C. § 1382c(a)(3)(I). (Doc. 14 at 21-24). Because the ALJ's error in finding that Plaintiff's impairment failed to meet or medically equal a listed impairment requires remand, the Court does not address the remaining issues.

### A. The ALJ's Listing Analysis is Ambiguous

In his second issue, Plaintiff argues that the ALJ improperly found that he did not meet Listing 112.05D which is satisfied when the claimant: (1) has significantly subaverage general intellectual functioning with deficits in adaptive functioning; (2) a "valid verbal, performance, or full scale IQ of

---

[6] The listings for mental disorders have been revised, effective January 17, 2017. *See* 81 Fed. Reg. 66137 (Sept. 26, 2016). In reviewing agency decisions, however, district courts are to apply the rules that were in effect at the time the final decision was issued. *Id.* at 66138 & n.1. In reviewing the decision in this case, the Court will apply the rules in effect when the decision became final on December 4, 2014. AR 1-3.

7

60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant limitation on function." 20 C.F.R. pt. 404, App. 1 §§ 112.00, 112.05D. A physical or other mental impairment imposes an additional and significant limitation on function "if it causes more than minimal functional limitations, *i.e.*, is a 'severe' impairment[], as defined in [20 C.F.R. § 416.924(c)]." 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00A.

On June 11, 2012, examining physician Dr. Portnoff assessed Plaintiff with a full scale IQ score of 64 on the Wechsler Intelligence Scale. AR 374. Dr. Portnoff stated that Plaintiff made adequate effort for all test procedures, and his score is a "valid representation of [Plaintiff's] current cognitive status." AR 373. Dr. Portnoff further opined that "in terms of the standard error of measurement, there is a 90% probability that [Plaintiff's] true, current, WISC-IV IQ falls between 61 and 69." AR 373. Two years earlier on September 19, 2010, examining physician Dr. Izzi assessed Plaintiff's full scale IQ score as 73. AR 333-339. In his psychological evaluation, Dr. Izzzi wrote "the test results are valid." AR 335. "The test results suggests, that when compared to his same age group, [Plaintiff's] level of intellectual functioning ranged from Borderline to Low Average Range, according to his test scoring criteria." AR 335. The ALJ acknowledged both scores in his decision but found that Plaintiff did not meet the criteria of Listing 112.05. Specifically, at step-three, the ALJ wrote:

> The claimant's impairments do not meet or medically equal in severity the criteria for an impairment listed in 20 CFR, Part 404, of Subpart P to Appendix 1, Parts A or B. The State agency medical consultant and pediatric rheumatologist, Esdel Arce-Hernandez, M.D., opined the claimant's impairments do not meet or medically equal any listing. There is no other subsequent medical opinion in the record stating the claimant meets or medically equals a listed impairment before January 26, 2012. Based upon the uncontradicted opinions of the State agency medical consultants and Dr. Arce-Hernandez, the undersigned finds the claimant's impairments do not meet or medically equal any listed impairment. Specifically, his impairments do not meet or medically equal the criteria of listings 114.09 for inflammatory arthritis and 12.05 for intellectual disability.

AR 13.

Here, the ALJ's statement does not clearly indicate whether the ALJ found that the 112.05/12.05 listing requirements were not met because he: (1) rejected Plaintiff's verbal and full

scale IQ scores of 55 and 64, respectively, even though they are within the Listing 60 through 70 range, as "invalid"; (2) determined that Plaintiff did not have "a physical or other mental impairment imposing an additional and significant limitation of function"; or (3) determined that neither of the conjunctive requirements of 112.05D or any other intellectual disability section were met. This ambiguity requires remand as explained more fully below.

### B. The ALJ Erred in his Treatment of Plaintiff's Qualifying IQ Score

Plaintiff argues that he has a valid qualifying IQ score of 64 and that he therefore meets Listing of 112.05D. (Doc. 14 at 21-22). In response, Defendant argues, somewhat vaguely, that Plaintiff fails to satisfy Listing 112.05 because "he has an IQ score of 73." (Doc. 23 at 6). Defendant does not otherwise contend that the full scale IQ score of 64 obtained by Dr. Portnoff was invalid, or that the ALJ adequately explained why he ignored the (otherwise valid) qualifying score in determining that Plaintiff failed to meet or medically equal Listing 112.05D. *See generally* (Doc. 23 at 6). Instead, Defendant argues that the ALJ properly relied on other supporting evidence in the record to conclude that Plaintiff's impairments do not meet or equal a listing. (Doc. 23 at 6). The Court, however, cannot assume, via the ALJ's silence, that he intended to disregard the qualifying IQ score based on other evidence that Plaintiff functions at a higher level than the full-scale IQ score of 64 indicates. *See Gomez v. Astrue,* 695 F. Supp. 2d 1049, 1057 ("the ALJ cannot disregard a valid IQ simply because other evidence in the record could support a finding of nondisability in the absence of such a score").

Although an ALJ has the authority to rely on external evidence supporting a scores invalidity, at a minimum, "an ALJ should not find that 'other evidence' renders an IQ invalid without explaining how that evidence impacts the validity of the score." *See Gomez,* 695 F. Supp. 2d at 1057 (discussing Ninth Circuit's decision in *Thresher v. Astrue,* 283 F. App'x 473, 475 & n. 6 (9th Cir. 2008); *Strickland v. Colvin*, 2015 WL 1728354, 2015 U.S. Dist. LEXIS 49812, at *4 (C.D. Cal. Apr 15, 2015) (remanding where it was unclear whether ALJ rejected full-scale IQ score); *Rodgers v. Colvin*, No. 1:16-cv-00544-BAM, 2017 U.S. Dist. LEXIS 147561, 2017 WL 4004166 (E.D. Cal. Sep. 12, 2017) (same).

Here, it is not clear whether the ALJ found that Plaintiff's full scale IQ score, which was within the 60-70 range, was invalid. Because the ALJ articulated no rationale for finding that Plaintiff does not have a valid verbal or full scale IQ of 60 through 70, his determination—if, in fact, he made such a determination—that Plaintiff does not meet Listing 112.05 is not properly supported. *See Gomez,* 695 F. Supp. 2d at 1057 ("an ALJ should not find that 'other evidence' renders an IQ invalid without explaining how that evidence impacts the validity of the score"); *id.* ("the ALJ cannot disregard a valid IQ simply because other evidence in the record could support a finding of nondisability in the absence of such a score"); *see also Strickland*, 2015 WL 1728354, at *4 (remanding where it was unclear whether ALJ rejected full-scale IQ score).

The ALJ's decision is made further ambiguous by the ALJ's contradictory findings made later in the opinion. On one hand, in weighing the opinion evidence, the ALJ expressly accepts Dr. Portnoff's opinion giving it "great weight…because it is consistent with the record as a whole." AR 16. The ALJ adopts Dr. Portnoff's medical opinions as to the nature of Plaintiff's impairments, but does not state why he disregarded Dr. Portnoff's resultant IQ score of 64 as invalid.

On the other hand, in assessing Plaintiff's functional equivalence, the ALJ acknowledged that Plaintiff had IQ scores spanning the range from 64 to 73, but suggested Plaintiff's score was inconsistent with his activities and abilities. The ALJ focused on the "functional equivalence" including areas of "acquiring and using information" and "caring for yourself." AR 18, 21. However, a Plaintiff's level of functioning is not necessarily analogous to the validity of Plaintiff's IQ score. Unlike other mental listings, determining whether a claimant meets or medically equals Listing 112.05 does not require the Commissioner to assess the severity of the claimant's impairment according to the functional limitations imposed by the impairment, including daily activities, social functioning, and persistence, pace, and concentration. 20 C.F.R. Part 404, Subpart P, Appendix 1. According to listing 112.05, a claimant's impairment will meet that listing if it satisfies any of the given criteria of the listing. *Id.* In the case of listing 112.05D, the criteria to support a disability finding requires that a claimant have a valid IQ of 60 to 70 and an additional significant physical or mental functional limitation. *See Thresher,* 283 F. App'x at 475 ("while the ALJ pointed to the level of [plaintiff's]

functioning, she did not find that the [IQ] score was invalid, and the listing does not speak to functioning—it speaks only to the IQ score itself"); *Wallace v. Colvin*, No. 2:12-cv-3075-EFB, 2014 U.S. Dist. LEXIS 36840 (E.D. Cal. Mar. 19, 2014).

Finally, the Court cannot find the ALJ's error to be harmless. If—as the evidence suggests—Plaintiff's IQ score of 64 was valid, it is likely that Plaintiff met the listing, as the ALJ found that Plaintiff had "severe" medically determinable impairments including juvenile rheumatoid arthritis and a learning disability. AR 13. There is also credible evidence in the record, namely Dr. Portnoff's opinion that the ALJ credited, that Plaintiff has "low adaptive functioning." AR 16. As noted above, a severe physical impairment in addition to deficits in adaptive functioning and an IQ score within the identified range meets the listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00A; *Id.* at § 112.05D. Upon remand, the ALJ must reconsider whether or not Plaintiff meets listing 112.05.

### C. Remand is Required

The Court has considered Plaintiff's request to award benefits based on an argument that he meets Listing 112.05D. However, the Court finds remand more appropriate. The circumstances of this case indicate that there are outstanding issues at step three that must be resolved before a final determination can be made. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ( "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated."). The Ninth Circuit has held that when "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (remanding "for proper consideration of step three equivalence"). Here, further administrative review may remedy the ALJ's step three analysis and thus remand is appropriate.[7]

///

///

---

[7] The Court need not, and has not adjudicated Plaintiff's other challenges to the ALJ's decision except insofar as to determine that a reversal and remand for immediate payment of benefits based thereon would not be appropriate.

11

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand, the ALJ will address the deficiencies identified by the Court. If necessary, the Commissioner may hold further hearings and receive additional evidence. Accordingly, the Clerk of this Court is **DIRECTED** to enter judgment in favor of Plaintiff Z.A.H., and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 19, 2017**        /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE